**Monty RADER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0907–CR–691.**

Court of Appeals of Indiana.

Aug. 24, 2010.

Robert D. King, Jr., David R. Thompson, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

On interlocutory appeal from a denied motion to suppress, Monty Rader ("Rader") presents two issues: (1) whether there was a sufficient nexus between Rader's home and the alleged criminal activity to justify the issuance of the search warrant; and (2) whether Indiana courts should recognize a privacy interest in the subscriber information of an internet service provider. Answering the first issue in the affirmative and the latter issue in the negative, we affirm.

### Facts and Procedural History

On May 7, 2008, Indianapolis Police Detective Darin Odier ("Detective Odier") used the Yahoo! internet instant messaging ("IM") service, posing as a fourteen-year-old girl. That evening, Detective Odier received an IM message from an

individual with the user name "monty20064." Tr. p. 142. Detective Odier IMed monty20064 that "she" was "almost 15," to which monty20064 responded, "iam to old iam look to play on cam." Appellant's App. p. 142. The chat between the two quickly became sexual in nature, with monty20064 asking Detective Odier if she had sexual intercourse before, if she performed oral sex, and if she had a webcam. *Id.* at 143–44. This conversation ended, but later that evening, Detective Odier, still posing as the same fourteen-year-old girl, received another instant message from monty20064, which started another conversation between the two. This time, monty20064 again inquired about oral sex, asked if she had seen older men on her computer, if she had masturbated, and if she liked phone sex. Detective Odier was then asked to view images from monty20064's webcam. When he did so, he saw a white male exposing and fondling his penis. Another conversation between the two occurred on May 9, 2008, during which monty20064 again asked about oral sex, phone sex, and masturbation.

Detective Odier subsequently sent a subpoena to Yahoo! seeking the account information for the user name "monty20064." In response, Yahoo! returned a document indicating that the user name monty20064 was registered by "Mr. monty rader" in Greencastle, Indiana. Appellant's App. p. 155. The return also included a login tracker from May 2 through May 13, 2008, showing that monty20064 had logged in thirty-nine times in that period. The login tracker also showed the date, time, and which IP address[1] was used to login to the monty20064 account. All logins, except for the first three on

May 2, 2008, were from the same IP address: 72.4.80.236. Thus, whoever logged in to the monty20064 Yahoo! account on May 7 and May 9—the dates that Detective Odier communicated with monty20064—logged in from a computer with the IP address 72.4.80.236.

Armed with this information, Detective Odier caused a subpoena to be issued to an internet service provider ("ISP"), seeking the account information connected with the IP address 72.4.80.236 on May 7 and 9, 2008. In response to this subpoena, the ISP sent a letter stating in relevant part:

> [T]he subscriber information associated with IP address 72.4.80.236 is:
>
> > Kenneth Rader
> >
> > 829 E Washington Street
> >
> > Greencastle, Indiana 46135
>
> *    *    *
>
> Although we cannot confirm that the subscriber was using the IP address on those specific times and dates, we can confirm that this subscriber was associated with the IP address both prior to and subsequent to the dates and times in question.

Appellant's App. p. 152.[2]

Detective Odier then prepared an affidavit for probable cause to obtain a search warrant. The affidavit detailed Detective Odier's IM conversation with monty20064, and then described the investigation from there as follows:

> A subpoena was sent to Yahoo for account information for "Monty20064". The subpoena return showed the account in the name of Monty Rader in Greencastle, Indiana 46135. The return

---

1. "Each computer attached to the Internet has an internet protocol address, or I.P. address, which identifies its location to the Internet network." *Howell v. State,* 921 N.E.2d 503, 505 n. 2 (Ind.Ct.App.2009).

2. Kenneth Rader is the defendant's father.

also listed log-on I.P. addresses for "monty20064".

A subpoena was sent to the internet provider requesting account information for the I.P. address used by "monty20064" at the approximate times of our on-line chats. The return shows the I.P. addresses associated with the address of 829 E. Washington St., Greencastle, Indiana 46135.

Additional records showed Monty R. Rader, DOB 8/1966, with an address of 829 E. Washington St., Greencastle, Indiana 46135. My training and experience shows that persons engaged in this type of criminal activity frequently use and maintain a computer in their residence. Furthermore, persons engaged in this type of criminal activity often keep other indicia of this criminal activity in their residence and/or in the immediate proximity of their computers. These items include, but are not limited to: Photos, videos, graphic pictures, logs, notes, journals, maps, phone numbers, and other devices that store or maintain details of their criminal activities.

Based on the above information, this affiant is requesting a search warrant for 829 E. Washington St., Greencastle, Indiana 46135....

Appellant's App. pp. 149–50.

Upon review of this probable cause affidavit, the magistrate issued a search warrant on June 18, 2008, and the police executed the warrant the following day. When the police arrived at Rader's house, they saw Rader arrive in his vehicle. The police identified themselves, informed Rader that they had a warrant to search the residence, and escorted him inside the home. Inside, the police read the warrant to Rader and his father, who was also inside the home at the time. Detective Odier advised Rader of his Miranda rights. Rader then told Odier that he used the screen name monty20064, that no one else had access to his user name or password, and that he chatted on Yahoo! on a regular basis.

On June 20, 2008, the State charged Rader with two counts of Class C felony child solicitation.[3] Rader filed a motion to suppress the evidence seized from the search of the home on October 21, 2008. In his motion, Rader claimed that there was no probable cause to issue the warrant, that the warrant failed to establish a nexus between the place searched and the criminal activity, and that he had a constitutionally-protected privacy interest in his Yahoo! account information. The trial court heard Rader's motion to suppress on April 9, 2009, and denied the motion on May 26, 2009. Rader then petitioned the trial court to certify its order denying his motion to suppress for discretionary interlocutory appeal, and the trial court did so on June 26, 2009. Rader then petitioned this court to accept jurisdiction over his interlocutory appeal, and we granted his petition on September 8, 2009.

### Standard of Review

Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Mehring v. State*, 884 N.E.2d 371, 376 (Ind.Ct.App.2008), *trans. denied*. Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. *Id.* (citing *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997)). "In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical,

---

3. The initial charging information included a charge of Class D felony dissemination of matter harmful to minors, but this count was later dismissed.

common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id.* at 376–77 (citing *State v. Spillers*, 847 N.E.2d 949, 953 (Ind.2006)).

■■■ The duty of a reviewing court[4] is to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 377. While we review the question de novo, we give significant deference to the issuing magistrate's determination and focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause. *Id.* "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *Id.* (citing *Rios v. State*, 762 N.E.2d 153, 157 (Ind.Ct.App.2002)). On review, we consider only the evidence presented to the issuing magistrate and not *post hac* justifications for the search. *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind.1997).

## I. Nexus

■■ The principles of the protections against unreasonable searches and seizures are codified in Indiana Code section 35–33–5–2, which details the information to be included in a search warrant affidavit. *See State v. Spillers*, 847 N.E.2d 949, 953 (Ind.2006). This statute provides in relevant part:

> [N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
> (1) particularly describing:
>   (A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;
(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
  (A) the things as are to be searched for are there concealed; or
  (B) the person to be arrested committed the offense; and
(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

Ind.Code § 35–33–5–2(a) (2004).

Thus, a probable cause affidavit is required to establish a logical connection, or nexus, between the suspect and the location to be searched. *See Allen v. State*, 798 N.E.2d 490, 498 (Ind.Ct.App.2003) (rejecting defendant's claim that probable cause affidavit did not link crime alleged to the apartment that was searched and concluding that "the affidavit clearly establishe[d] the nexus between the crimes committed with the weapons that were sought and the apartment that was searched."); *see also Walker v. State*, 829 N.E.2d 591, 595–96 (Ind.Ct.App.2005) (holding that probable cause affidavit failed to establish a nexus between suspect who had sold marijuana at public barbershop and the barbershop such that there was a basis to believe marijuana was being sold or stored in the shop and would likely be present when the search warrant was executed); *Hensley v. State*, 778 N.E.2d 484, 488 (Ind. Ct.App.2002) (concluding that probable cause affidavit was insufficient because it failed to indicate that defendant lived in home to be searched).

Here, Rader claims that the probable cause affidavit established no probability

---

4. In this context, a "reviewing court" includes both the trial court ruling on a sup- pression motion and an appellate court reviewing that decision. *Id.*

that evidence of a crime would be found at the home on 829 East Washington Street in Greencastle. Specifically, Rader argues that "there is nothing which would indicate that the IP address used by Monty20064 to communicate with Detective Odier was connected to 829 E. Washington." Appellant's Br. p. 11. In support of his argument, Rader relies on *Mehring, supra.*

In *Mehring,* an FBI agent found several digital images of child pornography on an on-line file sharing service being offered from a specific IP address. *Id.* at 373. The agent then tracked this IP address and identified the ISP and sent a subpoena to the ISP requesting information for that IP address. *Id.* at 373–74. The subpoena return from the ISP indicated that the IP address in question belonged to defendant Mehring at an address on Lockfield Court in Indianapolis. *Id.* at 374. The probable cause affidavit in *Mehring* listed the specific IP address that the FBI agent had downloaded the images from and specifically stated that this IP address "belonged to Brian Mehring at … Lockfield Court … Indianapolis, Indiana, at the specific date and time of the download." *Id.* The police eventually located Mehring, executed the search warrant, and discovered child pornography. *Id.* On appeal from the trial court's denial of his motion to suppress, the court held that the issuing magistrate could reasonably conclude that Mehring was the same individual identified in the probable cause affidavit. *Id.* at 380.

Rader claims that, unlike in *Mehring,* here there was nothing which would indicate that the IP address used by monty20064 to communicate with Detective Odier was "connected to" the East Washington Street address. We disagree.

Here, the probable cause affidavit explained that the subpoena return from Yahoo! revealed that the account for "monty20064" was registered in Monty Rader's name, and further listed the IP address used to log in to the account on the dates in question. These assertions are supported by the record.[5] The probable cause affidavit further explained that the subpoena return from the ISP for the relevant IP address indicated that the same IP address that had been used to log in to the monty20064 account was "associated with" the address 829 East Washington Street in Greencastle, which the affidavit further explained was Rader's home address. Appellant's App. p. 149. This too is supported by the materials in the record.

Thus, the probable cause affidavit clearly shows the following chain of events in Detective Odier's investigation. An individual using the Yahoo! screen name monty20064 attempted to solicit sex from, and exposed himself to, Detective Odier, who was posing as a fourteen-year-old girl. This user name was registered to Monty Rader, and the account was accessed on the dates of the IM in question from a certain IP address. This IP address was associated with the house on East Washington Street in Greencastle where Rader lived. From this, the issuing magistrate could make a practical, common-sense decision that evidence of the suspected crime of child solicitation would be found at Rader's home on East Washington Street in Greencastle.

Rader complains that the probable cause affidavit here, unlike that in *Mehring,* failed to specifically list the actual IP address used by monty20064. Under the facts and circumstances before us, this is

---

5. As noted above, the login tracker from Yahoo! showed that all but the first three of thirty-nine logins to the monty20064 account were made from the IP address 72.4.80.236, and all of the logins from the dates when Detective Odier conducted his IM chat with monty20064 were made from this IP address.

not a fatal omission. The probable cause affidavit clearly indicated that the IP address used to log in to the monty20064 account on the dates of the online chats with Detective Odier was the same IP address associated with the house in Greencastle where Rader lived.

Rader makes much ado about the fact that the probable cause affidavit says that the IP address used by monty20064 was "associated with" the East Washington Street address in Greencastle and argues that this "does not reveal any connection of criminal activity to ... E. Washington Street." Appellant's Br. p. 11. While "associated with" is perhaps an overly artful use of language, we think it clear from the plain meaning of the word "associate" and the context of the probable cause affidavit that the IP address obtained from the Yahoo! subpoena return was linked to Rader's home.[6] In other words, the IP address used to log in to the monty20064 account was, on the dates in question, assigned to Rader's home in Greencastle. From this information, the issuing magistrate could properly link the criminal activity of the monty20064 account to both Monty Rader and the address where Rader lived.[7]

In summary, the probable cause affidavit sufficiently established the statutory "good cause to believe" that evidence of the suspected crimes committed by monty20064 would be found at Rader's home in Greencastle. The magistrate therefore properly issued the search warrant based upon the probable cause affidavit, and the trial court properly rejected Rader's argument that the affidavit was insufficient.

## II. Expectation of Privacy

■ Rader next argues that, under Article 1, Section 11 of the Indiana Constitution, we should recognize a privacy interest in the subscriber information of an individual's internet account. Rader acknowledges that federal courts have rejected arguments that such subscriber information is protected by the Fourth Amendment to the United States Constitution. *See* Appellant's Br. p. 13 n.6 (citing *Guest v. Leis*, 255 F.3d 325, 326 (6th Cir. 2001); *United States v. Hambrick*, 55 F.Supp.2d 504, 508–09 (W.D.Va.1999), *aff'd*, 225 F.3d 656 (4th Cir.2000)). Rader also acknowledges that our supreme court has held that a prosecutor can properly secure information from a third party, such as an ISP, by the issuance of a subpoena duces tecum.

■ Specifically, in *Oman v. State*, 737 N.E.2d 1131, 1138 (Ind.2000), the court held that a prosecutor acting without a grand jury must first seek leave of court before issuing a subpoena duces tecum to a third party for the production of documentary evidence. The court recognized that the Fourth Amendment requirement of probable cause is applicable to subpoenas duces tecum "to the extent that the grand jury or the prosecutor in issuing such sub-

---

6. The first entry in the Oxford English Dictionary's definition of the verb "associate" is "To join (persons, or one person with (to arch.) another), in (to obs.) common purpose, action, or condition; *to link together,* unite, combine, ally, confederate." *The Oxford English Dictionary,* (2d ed.1989), *OED Online,* available at http://dictionary.oed.com/cgi/entry/00181778 (emphasis added).

7. Rader briefly argues that the probable cause affidavit was "arguably misleading" because

it failed to mention that the ISP could not "confirm that the subscriber was using the IP address on those specific times and dates[.]" Appellant's App. p. 152. However, the ISP could confirm that the subscriber at East Washington Street in Greencastle "was associated with the IP address both prior to and subsequent to the dates and times in question." *Id.* We therefore cannot say that the affidavit was actually misleading.

poenas may not act arbitrarily or in excess of their statutory authority." *Id.* at 1139 (citing *State ex rel. Pollard v. Criminal Court of Marion County,* 263 Ind. 236, 253, 329 N.E.2d 573, 586 (1975)). The court ultimately concluded that "a properly issued investigative subpoena—one that is reasonable under the Fourth Amendment—must *only* be: (1) relevant in purpose; (2) sufficiently limited in scope, and (3) specific in directive so that compliance will not be unreasonably burdensome." *Id.* (citing *Pollard,* 263 Ind. at 254, 329 N.E.2d at 586 (citing *See v. City of Seattle,* 387 U.S. 541, 544, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967))).

Rader does not argue that the subpoenas issued in the present case failed to comply with this standard. Instead, he claims that "*Oman* permits a lower level, and . . . constitutionally impermissible level of protection." Appellant's Br. p. 16. Rader argues that we should adopt the holding of the New Jersey Supreme Court in *State v. Reid,* 194 N.J. 386, 945 A.2d 26, 27 (2008), in which the court held that, under the search and seizure provisions of the New Jersey Constitution, citizens of that state had a reasonable expectation of privacy in the subscriber information they provide to ISPs. In response to this argument, we make two observations.

First, as noted by the State, the court in *Reid* held that law enforcement officials in New Jersey could satisfy that state's constitutional requirements by serving a grand jury subpoena on an ISP. *See id.* at 28. This is similar to the holding of our supreme court in *Oman. See* 737 N.E.2d at 1137–38. In fact, *Reid* held that probable cause was not required for the issuance of such subpoenas and declined to adopt a requirement that notice be provided to

account holders whose information is subpoenaed. 945 A.2d at 35–36. Thus, even *Reid* does not afford the broad protection of subscriber information Rader apparently seeks.

Second, to the extent that Rader argues that *Oman* was incorrectly decided and that we should instead adopt the holding from *Reid,* this is beyond our authority. *See Dragon v. State,* 774 N.E.2d 103, 107 (Ind.Ct.App.2002) (noting that we are bound by precedent of our supreme court until it is changed either by that court or by legislative enactment), *trans. denied.* Rader concedes that *Oman* would permit the sort of subpoenas issued in the present case; he simply thinks *Oman* was decided incorrectly. If there is a change that should be made in the case law in this regard, it is a change that must come from our supreme court.[8]

### Conclusion

The trial court did not err in denying Rader's motion to suppress because the probable cause affidavit sufficiently established a nexus between Rader's home and the criminal activity. We must reject Rader's request that we follow the precedent of the New Jersey Supreme Court and ignore the holding of the Indiana Supreme Court with regard to the issuance of investigatory subpoenas to third parties.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

---

**8.** We acknowledge that *Oman* did not engage in a detailed analysis of Indiana Constitutional law.