## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 18 2019, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Keating
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derek Heuring, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 18, 2019 <br><br> Court of Appeals Case No. 19A-CR-140 <br><br> Appeal from the Warrick Superior Court <br><br> The Honorable Amy S. Miskimen, Judge <br><br> Trial Court Cause No. 87D02-1808-F2-435 |

**Robb, Judge.**

# Case Summary and Issue

[1]     Derek Heuring brings this interlocutory appeal from the denial of his motion to suppress evidence discovered during the execution of multiple search warrants, in which officers discovered drugs, paraphernalia, and the GPS tracking device officers had previously placed on Heuring's vehicle. The State charged Heuring with theft and several drug-related counts. Heuring filed a motion to suppress the evidence, and following a hearing, the trial court denied his motion. Heuring raises two issues on interlocutory appeal, which we consolidate and restate as whether the trial court erred in denying Heuring's motion to suppress. Concluding substantial evidence of probative value supports the trial court's denial of Heuring's motion to suppress, we affirm and remand.

# Facts and Procedural History

[2]     Based on information from a confidential informant and their own observations, police believed that Heuring was using his vehicle to deal methamphetamine. On July 11, 2018, Detective Matt Young of the Warrick County Sheriff's Office submitted an affidavit for probable cause and application to place a GPS tracking device on Heuring's 1999 Ford Expedition. A magistrate granted the search warrant, and on July 13, Detective Young placed the device on Heuring's Ford Expedition. The GPS tracking device was a 4" x 6" "little black box" with a magnetic casing and contained inside was software that provides signals indicating the device's location to satellites. Transcript at 5. From July 13 through July 19, the device signaled its location

throughout the day. Most of the readings were from Heuring's residence, which was located on West State Road 62 in Boonville, Indiana, and from a nearby barn.

[3] The last update from the device came from Heuring's residence on July 20 at 7:34 p.m. Although the device did not provide any more updates, the device's battery reading was 100%. Several days later, on July 23, Detective Young contacted U.S. Fleet Services, the technicians of the device, to inquire as to why there were no readings if the battery was fully charged. The technician told Detective Young that the satellite "was not reading and that the device could have been unplugged and plugged back in to cause that." Exhibit Volume at 31. At some point, Detective Young observed the vehicle in a barn on McCool Road in Boonville and confirmed the property belonged to Heuring's parents. Officers also observed that some of the vehicle's tires had been slashed, which explained why the vehicle was in the barn and possibly indicated that the barn had been affecting the satellite reception.[1]

[4] On July 30, 2018, Deputy Jarrett Busing of the Warrick County Sheriff's Department and Detective Young drove by the barn on McCool Road and observed Heuring's vehicle. While conducting surveillance on the barn, they observed two individuals come to the barn and then leave. The officers followed one of the individuals and, when they returned to the barn, Heuring's

---

[1] It is unclear from the affidavit whether the officers were able to observe the vehicle in the pole barn from the road or whether the officers had to look inside the barn to observe the vehicle.

vehicle was gone.  The officers then drove to Heuring's residence and observed the vehicle parked at the house.  Detective Young contacted U.S. Fleet Services once again to determine whether the device was providing a signal now that it had been removed from the barn.  The technician informed Detective Young that "the device was not registering and needed a hard reset."  *Id*. at 16.  After talking with the technician, the officers decided to attempt to retrieve the device from the vehicle parked at Heuring's house.  Detective Young went to retrieve the device from the vehicle and discovered that it was no longer there.

[5]   Based on these facts, Deputy Busing applied for two search warrants to locate the GPS – one for Heuring's residence and one for the property on McCool Road belonging to Heuring's parents.  Both affidavits asserted there was "probable cause to believe that property constituting fruits, instrumentalities and evidence of the crime of theft[,]" namely a black 6" x 4" GPS tracking device, was being concealed on the property.  *Id*. at 15, 30.  In the affidavits, Deputy Busing also stated, "In my training and experience with GPS tracking devices, I have never seen a device lose power for more than a couple of hours and [the devices] have always come back on the system.  I have been made aware that a device has gotten disengaged from a vehicle by accident but was able to be located because the device was still giving readings by the satellite."  *Id*. at 17, 32.  At 5:34 p.m. on July 30, a magistrate granted warrants to search the "[p]remises, outbuildings, vehicles, and curtilage" of the properties.  *Id*. at 13, 28.

[6] Officers split into teams to execute the warrants. At 6:16 p.m., the officers with Deputy Busing executed the warrant to search the property on McCool Road. Heuring and a female were located in a nearby barn. While searching the pole barn, Deputy Busing opened a desk drawer and discovered a "large glass pipe" typically used to ingest methamphetamine. *Id.* at 38. Based on the discovered paraphernalia, Deputy Busing then applied for a warrant to search the property for evidence of narcotics and paraphernalia, which was granted. The GPS tracker was discovered during the second search in a "locked locker in the bathroom of the barn." Tr. at 12.

[7] In the meantime, Detective Young, along with several other officers and detectives, went to Heuring's residence to execute the warrant. Heuring's residence was about a half mile from his parent's property. After knocking and receiving no response, officers breached the door to get into the house. In plain view, officers discovered "three lines of a crystal substance" in a dish on the kitchen counter and a long glass pipe containing a "white powder substance[.]" Appellant's Appendix, Volume II at 23. Officers also observed a handgun in a backpack on the floor. While officers continued to search the house for the GPS device, Detective Young applied for a warrant to search for methamphetamine and other illegal drugs, which was granted at 7:35 p.m. A black GPS box, or casing, was discovered inside a locked safe in the bedroom of the residence along with two bags of methamphetamine and a container with pills. Officers also located various items indicating the using and dealing of methamphetamine, including (among numerous other items) digital scales, a

crystal substance that field tested positive for methamphetamine, and razor blades.

[8] On August 1, 2018, the State charged Heuring with the following: Counts 1 and 2, dealing in methamphetamine, Level 2 felonies; Count 3, possession of methamphetamine, a Level 3 felony; Count 4, dealing in methamphetamine, a Level 4 felony; Count 5, possession of methamphetamine, a Level 5 felony; Count 6 possession of a narcotic drug, a Level 6 felony; Count 7, unlawful possession or use of a legend drug, a Level 6 felony; Count 8, theft, a Class A misdemeanor; and Count 9, possession of paraphernalia, a Class C misdemeanor.

[9] Heuring filed a motion to suppress all evidence found during the searches on July 30, 2018, alleging the searches were in violation of the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. The State filed an objection to Heuring's motion and the trial court held a hearing on the motion on November 5, 2018. In his post-hearing brief, Heuring argued that the "affidavits requesting warrants to search for the GPS tracker fail[ed] to establish probable cause to believe 1) That the tracker was the fruit, instrumentality or evidence of theft, and 2) that it would likely be found at [Heuring]'s residence" and, as a result, the discovery of drugs and paraphernalia on his property should be suppressed as fruit of the poisonous tree. Appellant's App., Vol. II at 53. The trial court denied Heuring's motion to suppress and certified its order for interlocutory appeal, which we accepted.

# Discussion and Decision

## I.  Standard of Review

We review the denial of a motion to suppress similar to claims challenging the sufficiency of the evidence.  *Love v. State*, 842 N.E.2d 420, 424 (Ind. Ct. App. 2006).  That is, the record must disclose substantial evidence of probative value that supports the trial court's decision.  *Mehring v. State*, 884 N.E.2d 371, 376 (Ind. Ct. App. 2008), *trans. denied*.  We do not reweigh the evidence.  *Id*.  Instead, we consider the evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant.  *Bowers v. State*, 980 N.E.2d 911, 913 (Ind. Ct. App. 2012).  Although we give deference to a trial court's determination of the facts, the constitutionality of a search or seizure is reviewed *de novo*.  *Id*.

## II.  Probable Cause to Search for GPS

Heuring challenges the validity of the warrants authorizing the police to search for the GPS.  Specifically, he argues that there was insufficient evidence in the affidavits to establish probable cause to believe that the GPS tracker had been stolen, and the subsequent discovery of narcotics and paraphernalia constitute fruit of the poisonous tree that should be suppressed.

The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant.  *Rader v. State*, 932 N.E.2d 755, 758 (Ind. Ct. App. 2010), *trans. denied*.  "Probable cause is a fluid concept incapable of precise

definition and must be decided based on the facts of each case." *Id.* "Ultimately, the task of a magistrate in deciding whether to issue a search warrant is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *McGrath v. State*, 95 N.E.3d 522, 528 (Ind. 2018) (internal quotation omitted). When reviewing a magistrate's decision to issue a warrant, we apply a deferential standard. *Newby v. State*, 701 N.E.2d 593, 598 (Ind. Ct. App. 1998). We evaluate whether the reasonable inferences drawn from the totality of the evidence support the probable cause finding. *McGrath*, 95 N.E.3d at 528. "Rather than consider *post hoc* justifications for the search, we evaluate only the evidence presented to the issuing magistrate." *Id.*

[13] Here, the affiant, Deputy Busing, stated he believed that the properties contained fruits, instrumentalities and evidence of theft. "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft[.]" Ind. Code § 35-43-4-2(a). In the affidavit, Deputy Busing set forth the following facts in support of this belief:

- the device consistently provided signals from July 13 to July 19;
- updates ceased after July 20 at 7:34 p.m.;
- a technician at U.S. Fleet Service told Detective Young the device "could have been unplugged and plugged back in" to cause the lack of readings despite being fully charged;

- he observed the vehicle in the pole barn and believed that the barn was affecting satellite reception;

- the officers observed the vehicle outside of the pole barn on July 30 but later that day, it had been moved to Heuring's residence;

- Detective Young again contacted U.S. Fleet Service and was informed the device was still not registering although the vehicle was no longer in the barn and the device required a "hard reset";

- the officers discovered the device was no longer on the vehicle; and

- in Deputy Busing's training and experience with these devices, he had "never seen a device lose power for more than a couple of hours and [that] they have always come back on the system. [He had] been made aware that a device has [become] disengaged from a vehicle by accident but was able to be located because the device was still giving readings by the satellite."

Exhibit Vol. at 16-17.

[14] Heuring argues that the evidence establishes that the device could have become detached and damaged by accident or malfunctioned and the facts in the affidavit "do not lead a reasonable person to conclude that the unit was removed by human intervention and [was] likely to be found at one of the locations." Appellant's Brief at 11 (footnote omitted). We disagree. Based on the information provided in the affidavit, one could reasonably infer that even if the device fell off the vehicle or had been innocently removed by a person, the device would continue to provide readings. Heuring's argument is merely an

invitation to reweigh the evidence in his favor, which is not our role. *Mehring*, 884 N.E.2d at 376. Given our deferential standard with respect to the issuance of warrants, we conclude that the reasonable inferences drawn from the totality of the evidence presented in the affidavits support the probable cause finding that evidence of theft of the GPS tracker was likely to be found on the properties.

[15] We conclude the affiant provided sufficient evidence in the affidavits to establish probable cause to believe the GPS tracking device had been stolen, and therefore, the warrants to search for the device were valid. Because these warrants were valid, the evidence discovered during the execution thereof and pursuant to the subsequent warrants for narcotics and paraphernalia do not constitute fruit of the poisonous tree.[2] As such, substantial evidence of probative value supports the trial court's denial of Heuring's motion to suppress.

# Conclusion

[16] For the reasons set forth above, we conclude substantial evidence of probative value supports the trial court's denial of Heuring's motion to suppress.

---

[2] The State also argued that even if there was insufficient evidence in the affidavits to establish probable cause, the evidence seized was admissible under the good faith exception to the exclusionary rule – that the police relied on the warrant in good faith. Because we conclude above the affidavits sufficiently established probable cause, we need not address this issue.

Therefore, we affirm the trial court's ruling and remand for further proceedings consistent with this opinion.

[17] Affirmed and remanded.

Baker, J., and Najam, J., concur.