**Donald T. SHELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0904–CR–325.

Court of Appeals of Indiana.

May 26, 2010.

---

David W. Stone IV, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Donald T. Shell ("Shell") was convicted in Madison Superior Court of Class B felony possession of a firearm by a serious violent felon, Class D felony possession of marijuana, Class D felony maintaining a common nuisance, and two counts of Class D felony possession of a controlled substance, and sentenced to an aggregate term of eighteen years. Shell appeals and presents three issues, which we restate as:

I. Whether the trial court erred in admitting evidence obtained as a result of the execution of a search warrant on Shell's residence;

II. Whether the trial court erred in denying Shell's request for disclo-

sure of the identity of the State's confidential informant; and

III. Whether the sentence imposed by the trial court is inappropriate.

We affirm.

### Facts and Procedural History

For approximately a month and a half during the summer of 2008, Shell lived with his girlfriend Elizabeth Bair ("Bair") in Anderson, Indiana. Shell had moved his clothes and personal belongings to Bair's residence and spent every night there. In August of 2008, Anderson Police Detective Kevin Early ("Early") was told by a confidential informant ("CI") that Shell sold cocaine and marijuana at the residence he shared with Bair. Early had used information from the CI five to seven times in the past, and the CI had given Early accurate information. As a result of the CI's information, two other suspects had been convicted and charges were pending on a third suspect.

Based on the CI's information in this case, Early drove past the residence over ten times and saw a black vehicle used by Shell parked in the driveway. Early attempted to collect trash from the residence on two consecutive weeks, but there was no trash set out on the nights prior to the scheduled trash collection day. Finally, on the third week after Early received the information from the CI, Early was able to collect trash from the front of the residence on the night prior to the scheduled trash collection. In the two trash bags he took, Early found plant material and stems that tested positive for marijuana. He also found several plastic baggies with cut-out corners, and found one cut-out corner containing a white residue which tested positive for cocaine. The trash also contained a pill bottle with Bair's name.

On September 3, 2008, Early sought and obtained a warrant to search the residence

based on the evidence discovered during the trash search. Early then went to the residence and waited for other police officers to arrive to assist. Before the other officers arrived, Early saw Shell and Bair sitting on the front porch of the residence, but they went inside shortly before the other officers arrived. Once the other officers had arrived, the police knocked on the front door loudly, announcing that they had a warrant to search the residence. Neither Shell nor Bair answered the door, so the police had to kick in the door to enter.

Eventually, the police located Shell and Bair in a locked bedroom and had to force their way into the room. Shell was breathing heavily and sweating, yet claimed to have been asleep. The police also noticed that the toilet was still running and that there was a wet plastic bag in a nearby trash can. When the police searched Shell and Bair, they found $634 in cash on Shell and found marijuana hidden in Bair's bra. Inside the room, the police found a digital scale, which contained both marijuana and cocaine residue, a box of plastic baggies, and a knife. In the bedroom closet, which contained mostly men's clothing, the police found marijuana, an unlabeled pill bottle, and two handguns. Under the bed, the police found two plastic bags with a white, powdery substance. In the living room, the police found a container with a rock-like substance. Subsequent testing of the substances revealed a total of 42.2 grams of marijuana and 8.48 grams of cocaine discovered during the search of the residence. The pills found at the house were later identified as Xanax and Oxycodone.

The State ultimately charged Shell as follows: Count I, Class A felony dealing in cocaine; Count II, Class D felony posses-

sion of marijuana; Count III, Class D felony possession of a controlled substance, specifically Oxycontin; Count IV, Class D felony possession of a controlled substance, specifically Xanax (alprazolam); Count V, Class D felony maintaining a common nuisance; and Class VI, Class B felony possession of a firearm by a serious violent felon.[1]

After Bair was arrested and put in jail, another inmate told her that Shell wanted to speak with her. In the other inmate's cell, Bair could hear Shell, apparently from another cell. In this arrangement, Shell told Bair to file a report claiming that the police had planted drugs at her house and that Detective Early was involved in a romantic affair and took Xanax. Shell further told Bair to file a report with the FBI complaining about the local drug task force. Shell then told Bair to inform the police that he did not live at her residence, that she sold marijuana, and that her father had given her the handguns found during the search. Shell also told Bair to try to determine who the CI was and to speak with witnesses to insure that they would give favorable statements to the police. Shell told Bair that when she was released from jail, she should go back to her residence and look for any marijuana that the police did not find during the search and to flush it down the toilet. Shell finally told Bair that if she told "anyone anything," he would kill her. Tr. p. 157. When Bair was released from jail, she did dispose of the marijuana as instructed. Shell subsequently sent Bair letters telling her not to "roll on him." Tr. p. 159.

On November 7, 2008, Shell filed a motion to suppress the evidence discovered during the execution of the search war-

---

1. The State initially included a charge of Class D felony unlawful possession of a leg-

end drug, but this charge was not included in the amended information.

rant, claiming that the search warrant was based on evidence found during an improper trash pull. The trial court held a hearing on this motion on December 1, 2008. At the hearing, Shell's counsel asked Early to identify the CI, and the State objected. Early explained that he did not want to disclose the CI's identity because, at the time of the hearing, he was still working with the CI. The trial court denied Shell's request for the CI's identity. On December 8, 2008, the trial court denied Shell's motion to suppress.

A jury trial commenced on February 10, 2009. At trial, Shell objected to the admission of the evidence found during the execution of the search warrant, but the trial court overruled his objections. On February 12, 2009, the jury found Shell guilty on Counts II through VI but was unable to reach a verdict on Count I, and the trial court declared a mistrial as to that count. At a sentencing hearing held on March 16, 2009, the trial court sentenced Shell to two years on Counts II through V and eighteen years on Count VI and ordered all sentences to be served concurrently with each other. Shell now appeals.

## I. Admission of Evidence

■ Shell claims that the trial court erred in denying his motion to suppress the evidence found during the execution of the search warrant. However, because Shell is appealing following his conviction and is not appealing the trial court's interlocutory order denying his motion to suppress, the question is properly framed as whether the trial court erred in the admission of the evidence in question. *See Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). But whether the challenge is made by a pre-trial motion to suppress or by trial objection, our standard of review of rulings on the admissibility of evidence is essentially the same.

*Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied*.

■ Shell claims that the search warrant was improper because it was based on stale information. As a general rule, stale information will not support a finding of probable cause. *Mehring v. State*, 884 N.E.2d 371, 377 (Ind.Ct.App.2008). The exact moment when information becomes stale cannot be precisely determined. *Id.* Although the age of the information supporting an application for a warrant can be a critical factor when determining the existence of probable cause, our courts have not established a bright-line rule regarding the amount of time that may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Id.* Probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issuance. *Id.* Instead, whether the information is tainted by staleness must be determined by the facts and circumstances of each particular case. *Id.* Stale information will only give rise to a mere suspicion, especially when the items to be obtained are easily concealed and moved. *Id.*

■ Here, Shell claims that the search warrant was based on stale information because, by the time the trash search was conducted and the search warrant issued, the information given by the CI was approximately three weeks old. In support of his argument, Shell cites *Ashley v. State*, 251 Ind. 359, 241 N.E.2d 264 (1968). In that case, the court held that a search warrant was defective where the affidavit on which it was based established probable

cause that marijuana was at a residence on October 3, whereas the warrant was not issued until October 11, eight days later. *Ashley,* 251 Ind. at 367, 241 N.E.2d at 269. Shell claims that the information received from the CI was almost three times as old as the eight-day-old information at issue in *Ashley* and that therefore the warrant should not have been issued. We are unable to agree.

Here, the search warrant was not directly based on the information obtained via the CI. Instead, the search warrant was based on the evidence of illicit drugs found in the trash search, which occurred on the same day the warrant was issued. Shell argues that because no trash had been put out for collection in the two weeks prior to the trash search, the evidence found in the trash search was also stale because it could have been placed in the trash in the two weeks before the search. Shell cites no authority for this novel proposition, and we reject it. The evidence in the trash was discovered by Detective Early on September 3, 2008, and he obtained a search warrant based on this information the very same day. Regardless of when the items may have been placed in the trash, the trash itself was not set out for collection until September 3. And when Detective Early discovered this evidence in the trash, he acted on it almost immediately. Under these facts and circumstances, we cannot say that the evidence that Detective Early found in the trash was somehow stale simply because the trash had not been set out for collection for the prior two weeks.

■ Still, in Indiana, a trash search cannot be randomly conducted and must instead be based on a reasonable suspicion. In *Litchfield v. State,* 824 N.E.2d 356, 363 (Ind.2005), our supreme court held that random trash searches, or searches of those individuals whom the officers merely

hope to find in possession of incriminating evidence, are unreasonable and improper under Article 1, Section 11 of the Indiana Constitution. The court therefore held that trash searches must be supported by "articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile[.]" *Id.*

■ Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, but it still requires at least a minimal level of objective justification and must be based on more than an inchoate and un-particularized suspicion or "hunch" of criminal activity. *Washburn v. State,* 868 N.E.2d 594, 598 (Ind.Ct.App.2007). When reviewing a determination of reasonable suspicion to support a warrantless search, we examine the totality of the circumstances of the case to see whether the police had a particularized and objective basis for suspecting legal wrongdoing. *Id.* Reasonable suspicion is established when the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Id.*

■ Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Id.* at 601. Even though different, reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. *Id.* Both quantity and quality are considered in "the totality of the circumstances," i.e., the whole pic-

ture that must be taken into account when evaluating whether there is reasonable suspicion. *Id.* Thus, instead of reviewing the purported staleness of the information as a separate and independent factor to evaluate the reasonable suspicion requirement, we instead assess the age of the information as an element contributing to the totality of the circumstances. *Id.*

██ In the present case, Detective Early did not conduct a random trash search, nor did he merely hope to find incriminating evidence. Instead, his search of the trash was based upon the information he had been given by a reliable confidential informant, who told him that Shell sold marijuana and cocaine at the residence. Although the CI's information was approximately three weeks old at the time of the trash search, under the facts and circumstances before us, we believe it was sufficient to meet the lower threshold of reasonable suspicion. Because the trash search was supported by reasonable suspicion, and the items discovered during the trash search were not stale and sufficient to establish probable cause, the search warrant was properly issued. Therefore, the trial court did not err in admitting into evidence the items discovered during the execution of the search warrant.[2]

## II. Identity of Confidential Informant

██ ██ Shell next claims that the trial court erred in denying his request that Officer Early disclose the identity of the CI. In Indiana, the general policy is to prevent the disclosure of the identity of a confidential informant unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial. *Mays v. State,*

907 N.E.2d 128, 131 (Ind.Ct.App.2009) (citing *Schlomer v. State,* 580 N.E.2d 950, 954 (Ind.1991)). It is the defendant's burden to demonstrate the need for disclosure. *Id.* Bare speculation that the informant's identity may possibly prove useful is not enough to justify disclosure, and an informant's identity shall not be disclosed to permit a mere "fishing expedition." *Id.*

██ Here, Shell claims that the trial court should have required the State to disclose the identity of the CI, arguing first that the State waived the confidentiality of this information. *See* Ind. Evidence Rule 501(b) (providing that a privilege against disclosure is waived if the person with the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter). In support of his waiver argument, Shell refers to a portion of the suppression hearing transcript where Shell's counsel asked Detective Early about other cases involving the same CI:

Q ... Detective, you indicated that this confidential informant had worked with you in the past, correct?

A Correct.

Q How many times has this confidential informant worked with you?

A Between five and seven in controlled buys of cocaine. Information was given at one point ...

COURT: This would be as of the time of your testimony in front of Judge Spencer [at the hearing to obtain the search warrant], five to seven times?

WITNESS: Yes.

A That individual also gave information that was used in obtaining a search warrant. The information was

---

**2.** Because we conclude that the search warrant was properly supported by probable cause, we do not address Shell's argument that the good faith exception should not apply.

in reference to cocaine. That search was served, subject arrested, pled guilty to the cocaine charge. And the same subject gave us information on a person who was carrying a large amount of crack cocaine. We located that person in their vehicle, found the cocaine that the informant told us about, and charges are pending against that individual.

Q What's that individual's name?

[State]: Objection, Judge. It would be the same objection trying to link a confidential informant with an active case.

[Defense]: Judge, I don't see how the name of the defendant who has been charged is sensitive information.

COURT: Well, why wouldn't, you'd just trace it back, I assume. Your concern is you go back, look at the charging information, see what's in the PC Affidavit and go from there.

Suppression Tr. pp. 22–23.

Shell now argues that, if the State revealed the name of the CI in this prior case, then it cannot now assert that the CI's identity is confidential. However, there is no indication that the State actually disclosed the identity of the CI in any prior case. The only suggestion to that effect was the comment of the trial court judge in sustaining the State's objection to Shell's question regarding the name of the defendant in the other case where the CI had given Detective Early information. To the contrary, the fact that Detective Early was still working with the CI on other cases suggests that the name of the CI was still confidential.[3] Under these facts and circumstances, we cannot say

that the State waived any privilege regarding the identity of the CI.

Shell also claims that he needed to know the identity of the CI in order to know whether the CI actually exists. Although Shell cites authority for the proposition that police officers have been known to be untruthful, his argument goes more toward the credibility of Detective Early and his probable cause affidavit supporting the search warrant, subjects which we are ill equipped to review on appeal. And again, the information Early obtained from the CI simply established a reasonable suspicion that justified the trash search. It was the evidence in the trash search which led to the issuance of the search warrant and the subsequent discovery of contraband in Shell's residence. In short, Shell has not met his burden of demonstrating that the disclosure of the CI's identity would be relevant and helpful to his defense. Speculation will not suffice. *See Mays*, 907 N.E.2d at 131.

### III. Sentencing

▆▆▆▆ Lastly, Shell claims that the sentence imposed by the trial court is inappropriate. The trial court sentenced Shell to concurrent terms of two years on Counts II through V and eighteen years on Count VI. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentenc-

---

3. Moreover, the trial court ordered Early to share the identity of the CI with the prosecuting attorney. Certainly if the State had disclosed the name of the CI in an earlier case, this would have been unnecessary.

ing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind.2008). As explained in *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind.2007), it is on the basis of Appellate Rule 7(B) alone that a criminal defendant may now challenge his sentence "where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue." On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Id.* at 494.

With regard to the nature of the offense, we note that Shell was found in possession of both cocaine and marijuana in a residential area. Further, Shell was found to be in possession of firearms. This was a recipe for violence, which fortunately was never given the opportunity to occur in this particular instance.

With regard to the character of the offender, we note that Shell has a lengthy history of criminal and delinquent behavior that started in 1987. Shell's juvenile record is not among the worst, but it shows a pattern of almost uninterrupted delinquent behavior that continued after Shell reached the age of majority. Shell's adult criminal history includes a conviction for Class B felony dealing in cocaine in 1998 based upon a charge filed in 1996. Also in 1998, Shell was charged with Class A felony dealing in cocaine but subsequently pleaded guilty to the lesser offense of Class C felony possession of cocaine, and the sentences on both of these convictions were served concurrently.

Shell's conviction for being a serious violent felon in possession of a firearm was based on his prior conviction for Class B felony dealing in cocaine. Shell therefore claims that this prior conviction could not properly be used as an aggravating factor, citing *Hatchett v. State,* 740 N.E.2d 920 (Ind.Ct.App.2000), *trans. denied.* In that case, the court held that a defendant who had been convicted of being a serious violent felon in possession of a firearm could not have his sentence enhanced by the same prior conviction that formed the basis of the firearm charge, noting that a factor constituting a material element of a crime cannot be considered as an aggravating factor. *Id.* at 928.

Here, the trial court did not single out Shell's prior dealing conviction as an aggravating factor, but neither did it specifically state that it was not considering that conviction. Thus, to the extent the trial court relied on Shell's prior dealing conviction as an aggravating factor, such was improper. *See id.* Regardless, the trial court was well within its discretion to consider the rest of Shell's criminal history as an aggravating factor. *See id.* And we see no impediment to us considering the remainder of Shell's criminal history in addressing Shell's character under Appellate Rule 7(B). Moreover, Shell's criminal history involves drug offenses. And Shell was on probation from his prior convictions when he committed the instant offenses.[4] This leaves us with the firm impression that Shell has not learned from his prior experience with the criminal justice system or the lenience that has been shown to him in the past. Under these facts and circumstances, and giving due consideration, as we must, to the trial

4. Shell's probation was eventually revoked, apparently based on his criminal behavior in the instant case.

court's sentencing discretion, we cannot say that Shell's aggregate sentence of eighteen years is inappropriate.

### Conclusion

The trial court did not err in admitting into evidence the items found during the execution of the search warrant because the warrant itself was properly based on the items found during the trash search, and the trash search was properly based on reasonable suspicion as a result of the information received from the CI. The trial court did not abuse its discretion in denying Shell's request that the identity of the CI be disclosed. And Shell's aggregate sentence of eighteen years is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

RILEY, J., and BRADFORD, J., concur.