**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**ANDREW J. VANDENBOSCH**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY R. DEAN, JR., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 27A04-1204-PC-174 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-0707-PC-2

**February 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Larry R. Dean, Jr., appeals the denial of his petition for post-conviction relief. We affirm.

## ISSUES

Dean raises two issues, which we restate as:

I.       Whether the post-conviction court erred by rejecting Dean's claim of newly-discovered evidence.

II.      Whether Dean's trial counsel rendered ineffective assistance.

## FACTS AND PROCEDURAL HISTORY

The following facts are taken from Dean's direct appeal, in relevant part:

> In November of 2004, Casey Masters ("Masters") and her two-year-old daughter lived in the Greentree Apartment Complex. On November 14, 2004, Masters had several visitors at her apartment, including Maurice McClung ("McClung"), Jerry Campbell ("Campbell"), Mike Carroll ("Carroll"), Mitchell Newell, Patrick Banks, and Reggie Banks. The group listened to music and played Pac Man. At some point, McClung left the apartment but returned a short time later with Dean, also known as "Boogie." [Trial Tr.] at 39.[1] Minutes later, there was a knock at the door and Masters asked Dean to "get the door." *Id.* at 41. Three men, i.e., Allen Thompson ("Thompson"), Chris Cook ("Cook"), and Tyrell [Foard],[2] entered the apartment and ordered everyone to the ground. Masters noticed that two of the men, i.e., Thompson and Cook, had guns. Masters immediately picked up her daughter and obeyed the men's order. When the men turned their backs to Masters, she fled the apartment with her daughter, got into her vehicle, and contacted the police via 9-1-1. McClung also left the apartment with Masters.
>
> Meanwhile, when Thompson, Cook, and [Foard] entered the apartment, Carroll took money from his pocket and threw it underneath the

---

[1] We refer to the transcript from Dean's trial as "Trial Tr." and the transcript from Dean's post-conviction hearing as "PCR Tr."

[2] The record from Dean's criminal appeal spells Foard's name as "Ford," but at the post-conviction hearing Foard spelled his name as we use it in this opinion.

2

kitchen sink. On that date, Carroll was carrying a large sum of money and believed that the robbers were coming for him.[ ] After hiding the money, Carroll left the kitchen and got down on the floor, as the men had directed. One of the men approached Carroll and asked where his money was located. Carroll saw Campbell whisper something to the robber and the man went into the kitchen and retrieved Carroll's money. The robbers next took Carroll's car keys and coat, which contained his cell phone, and then left the apartment.

During a subsequent police investigation, Cook implicated Dean and McClung in the robbery. According to Cook, after receiving a telephone call from McClung, Thompson asked Cook and [Foard] to accompany him to the Greentree Apartment Complex where the trio would rob "some dudes out there." *Id.* at 168. Upon their arrival at the complex, the men did not know which apartment to rob until they saw McClung exit Masters's apartment. Simultaneously, Dean arrived at the apartment complex and Thompson, Cook, [Foard], McClung, and Dean "all [went] to another apartment building and talk[ed] about the robbery." *Id.* at 173. In preparation for the robbery, Cook armed himself with a BB gun. Dean gave Thompson a gun, informed the trio that he would open the door when they knocked, and directed Cook to "put the gun to him and he would give [Cook] his weed," i.e., marijuana. *Id.* at 177. McClung also advised the men that "a guy in a fur coat had the money." *Id.* at 176. After the robbery, Cook explained that he and [Foard] left in one vehicle, while Thompson fled in Carroll's [J]eep.

The following day, Dean and Campbell went to Cook's house and Cook gave Dean a pistol. According to Cook, Dean wanted "his stuff back" and, thus, Cook returned the gun and the marijuana to Dean. *Id.* at 187.

*Dean v. State*, No. 27A05-0512-CR-714, *2-4 (Ind. Ct. App. July 20, 2006), *trans. denied*. The police sought and obtained a search warrant for Dean's residence. Officers found a handgun and marijuana at Dean's home.

The State charged Dean with aiding in a robbery while armed with a deadly weapon, a Class B felony; conspiracy to commit robbery, a Class B felony; possession of marijuana, a Class D felony; and possession of a firearm by a serious violent felon, a Class B felony. Cook and Foard testified at trial that Dean planned and participated in

3

the robbery. The jury determined that Dean was guilty as charged, and the trial court sentenced him to an aggregate term of forty-three years. On appeal, Dean challenged the sufficiency of the evidence supporting his convictions for possession of marijuana and possession of a firearm by a serious violent felon. This Court reversed Dean's conviction and sentence for possession of marijuana, resulting in a reduced sentence of forty years, but otherwise affirmed the trial court.

Next, Dean filed a petition for post-conviction relief. The post-conviction court held a hearing, at which Cook, Foard, Thompson, and McClung testified. Those witnesses recanted their prior statements implicating Dean in the robbery. The court denied Dean's petition, and this appeal followed.

## DISCUSSION AND DECISION

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of evidence. *Ritchie v. State*, 875 N.E.2d 706, 713 (Ind. 2007). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* at 714. To prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Id.*

## I. NEWLY-DISCOVERED EVIDENCE

Dean argues that he presented new evidence to the post-conviction court that establishes his innocence. New evidence will mandate a new trial only when the petitioner demonstrates: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not

4

privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). We carefully analyze these nine factors because "the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Id.* A recantation or admission of perjury does not necessarily mandate the grant of a new trial. *Martinez v. State*, 917 N.E.2d 1242, 1247 (Ind. Ct. App. 2009), *trans. denied*.

In this case, Cook and Foard testified at Dean's trial, and they both implicated Dean in the planning and execution of the robbery. McClung and Thompson did not testify at Dean's trial, but they testified under oath at their guilty plea hearings for their roles in the robbery, and they both implicated Dean. However, at the post-conviction hearing, Cook, Foard, McClung, and Thompson recanted their prior statements implicating Dean. Cook, Foard, and McClung said at the hearing, and stated in affidavits that were admitted as exhibits at the hearing, that Dean met Cook, Foard, McClung, and Thompson outside the apartment prior to the robbery and, upon learning that they were planning a robbery, refused to have any part in the plan. Cook and Foard further testified that they later agreed to blame the robbery on Dean because Dean attacked Cook on the day following the robbery. In addition, McClung and Thompson testified that they implicated Dean at their guilty plea hearings because their lawyers advised them that such testimony would result in lighter sentences. Dean argues that Cook, Foard,

5

McClung, and Thompson's testimony and affidavits establish his innocence and meet the criteria for newly-discovered evidence.

The post-conviction court did not err in concluding that Dean's new evidence is unworthy of credit because Cook, Foard, McClung, and Thompson's testimony at the post-conviction hearing was riddled with inconsistencies. Thompson had stated in his affidavit, which was admitted into evidence at the hearing, that he saw Dean outside Masters's apartment before the robbery. Thompson's affidavit further provides that Thompson and his co-conspirators told Dean that they intended to commit the robbery, and Dean told them their plan was "silly" and not to carry it out while he was in the apartment. Petitioner's Ex. Vol., Ex. E. However, at the post-conviction hearing, Thompson testified that he did not see Dean outside the apartment prior to the robbery because he was "using the bathroom" around the side of the building when Dean arrived and went inside. PCR Tr. p. 133. Thompson admitted that he "ain't had time" to read his affidavit and merely signed it. *Id.* at 140.

Furthermore, Thompson testified at the post-conviction hearing that he told his lawyer that Dean was not involved in the robbery, but his lawyer advised him that he had to implicate Dean in order to obtain a favorable plea bargain. Thompson's lawyer flatly contradicted Thompson at the post-conviction hearing, stating that Thompson never told him that Dean was innocent. In addition, Thompson's lawyer testified that Thompson was not obligated to implicate Dean in the robbery as a condition of his plea agreement.

Turning to Cook, in his original trial testimony he said that he stole marijuana from Dean during the robbery. Cook specifically denied stealing a gold chain from Dean.

6

Cook further testified that on the day after the robbery, he met with Dean because Dean demanded his "weed and his gun" back. Trial Tr. p. 187. Cook did not state whether Dean was violent toward him. However, in his subsequent affidavit, Cook stated that Dean "slammed [Cook] into a mailbox" when they met after the robbery. Petitioner's Ex. Vol., Ex. B. Furthermore, at the post-conviction hearing, Cook stated, for the first time, that he had taken a gold chain, but not marijuana, from Dean during the robbery. Cook further stated that on the day after the robbery, Dean demanded that Cook return the chain and struck Cook. It is unclear why Cook would testify at trial that he took marijuana, thereby implicating himself in possession of a controlled substance, but deny taking the gold chain. Furthermore, at the post-conviction hearing Foard denied seeing or hearing about a gold chain. In addition, Campbell was present at the post-robbery meeting and testified at the post-conviction hearing that Dean did not strike Cook or demand the return of a gold chain.

Next, Foard testified at the post-conviction hearing that Cook sustained a black eye as a result of being hit by Dean, which allegedly motivated Cook and Foard to pin the robbery on Dean. However, Cook's mother testified at the post-conviction hearing and denied seeing any injuries on Cook on the day Cook met with Dean. Furthermore, Detective Justin Faw interviewed Cook two days after Dean's alleged assault, and he did not see any signs of injury on Cook. Foard testified that Faw should have been able to see Cook's injury.

Foard and Cook both testified at the post-conviction hearing that they created their scheme to implicate Dean a few days after the robbery while they were being driven to

7

Fort Wayne by Cook's mother. Cook testified that his mother could not have heard Foard and Cook create their plan because the music was too loud. However, Foard stated that the music was not too loud, Cook's mother would have heard them making their plan, and any testimony by Cook to the contrary was untrue. Cook's mother testified that she never heard Foard and Cook planning to set up Dean.

As for McClung, he testified at the post-conviction hearing that he called Dean from Masters's apartment because he wanted to buy marijuana from Dean for everyone in the apartment, and Dean went there to conduct the transaction. However, McClung further testified that when Dean arrived at the apartment and McClung was outside, Dean went inside the apartment without attempting to conduct the transaction. Dean also did not ask McClung to go inside the apartment with him. McClung further stated that when he implicated Dean at his plea agreement and sentencing hearing, he "didn't know what it mean[t]" to swear an oath, a proposition that is difficult to credit. PCR Tr. p. 113.

Finally, Cook, Foard, and McClung in essence asked the post-conviction court to believe that Dean was aware that they intended to enter Masters's apartment to conduct a robbery, but he still went into the apartment, trusting that the would-be felons would wait until after he left to carry out their plan. Their claim is difficult to believe.

After Thompson, Cook, and Foard testified at the post-conviction hearing, the State asked the court to find probable cause that they had committed perjury. The court granted the State's request. We do not take lightly the witnesses' recantation of their prior testimony, given the criminal penalties they faced. However, the four co-conspirators' new evidence, which purported to exculpate Dean, contains multiple

8

fundamental inconsistencies that render the evidence implausible. The post-conviction court determined that this new evidence was unworthy of credit, and we cannot conclude that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion. *See Greenwell v. State*, 884 N.E.2d 319, 329 (Ind. Ct. App. 2008) (determining that the post-conviction court properly concluded that a witness's recantation of her prior identification of Greenwell as the murderer was implausible and not worthy of credit), *trans. dismissed*.

## II. ASSISTANCE OF COUNSEL

Dean claims that his trial counsel should have challenged the search warrant that authorized officers to search his residence, where they found the handgun that led to his charge of possession of a handgun by a serious violent felon. To establish a claim of ineffective assistance of trial counsel, a defendant must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008). To establish the first element, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To establish the second element, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie*, 875 N.E.2d at 714.

9

In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind. 2009). The duty of the reviewing court is to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Id.* A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.*

Dean first argues that his trial counsel should have challenged the search warrant because he believes that it was based on stale information. As a general rule, stale information will not support a finding of probable cause. *Shell v. State*, 927 N.E.2d 413, 418 (Ind. Ct. App. 2010). Our courts have not established a bright-line rule regarding the amount of time that may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Id.* Probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issuance. *Id.* Instead, whether the information is tainted by staleness must be determined by the facts and circumstances of each particular case. *Id.*

In this case, Detective Faw began his investigation shortly after the robbery on the evening of November 14, 2004, when he was dispatched to the spot where Carroll's stolen Jeep was found. Carroll met with Faw early the next morning, and Carroll told Faw that he suspected Dean was involved. Faw interviewed Dean that same day, and he

denied any involvement in the robbery. Other persons who were present for the robbery identified the robbers as Thompson, Foard, and Cook. On November 17, 2004, Faw spoke with Cook's mother to advise her that Cook was involved in the robbery. When Faw mentioned Dean might be involved, Cook's mother told him that she saw Cook talking with Dean the day after the robbery. Next, Faw spoke with Foard on November 17, 2004, and he implicated Dean. Faw obtained a search warrant for Dean's residence the same day. Under these circumstances, we cannot say that the three-day period of time between the robbery and issuance of the warrant rendered Faw's information stale. Consequently, if Dean's trial counsel had challenged the search warrant on grounds of staleness, the challenge would have failed. Dean's counsel did not perform deficiently on this point.

Next, Dean argues that the search warrant should not have been issued because there was no probable cause. Specifically, Faw had stated in his probable cause affidavit that he had good cause to believe that Carroll's coat and a silver and black handgun would be found at Dean's residence. Dean argues that there is insufficient evidence to support that statement. We disagree. Foard told Faw that Dean was waiting for him, Cook, Thompson, and McClure outside the apartment when they arrived, and that Dean provided a silver and black handgun. Cook had brought a BB gun with him. Dean told them his plan for the robbery and advised them to point the BB gun, rather than the real handgun, at him during the robbery. After the robbery, which was carried out according to Dean's plan (as Foard described the plan to Faw), Cook left with the coat and the handgun and took them to his residence. Faw learned from Cook's mother that Dean met

11

with Cook on the day after the robbery. It is reasonable to infer that Dean took the gun back from Cook during the meeting because Dean had provided it in the first place and had planned the robbery. Furthermore, during the probable cause hearing, Faw stated that he was aware that Dean had planned a previous robbery using a juvenile to conduct the actual offense, and Cook was a juvenile at the time of this robbery.

This is a close case, but in determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant. *Mehring v. State*, 884 N.E.2d 371, 377 (Ind. Ct. App. 2008), *trans. denied*. Consequently, under the totality of the circumstances, there was sufficient evidence to support the magistrate's determination that the gun would be found at Dean's residence, and Dean's counsel did not perform deficiently by failing to challenge the warrant on this ground.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.