## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randall Edward Echard,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 30, 2020

Court of Appeals Case No.
20A-CR-924

Appeal from the
Tippecanoe Superior Court

The Honorable
Steven P. Meyer, Judge

Trial Court Cause No.
79D02-1910-F1-11

**Kirsch, Judge.**

[1] Following a plea of guilty to child molesting[1] as a Level 1 felony and to being an habitual offender,[2] the trial court sentenced Randall Edward Echard ("Echard") to an aggregate sentence of forty-eight years with forty-three years executed and five years suspended to supervised probation. He raises the following restated issues for our review:

> I. Whether the trial court erred by imposing a probation condition that restricts Echard's use of the internet and technology; and

> II. Whether Echard's sentence is inappropriate in light of the nature of the offense and his character.

[2] We affirm and remand with instructions.

## Facts and Procedural History

[3] In October of 2019, Echard, who was thirty-one years old at the time and on probation in another case, was living with his then-wife, Brandi Echard ("Brandi"), and his eight-year-old daughter from another relationship. *Tr. Vol. 2* at 14, 18, 33-35; *Appellant's Conf. App. Vol. 2* at 110. Brandi's thirteen-year-old cousin, A.B., was staying in Echard's house as an overnight guest. *Tr. Vol. 2* at 18. In the early morning hours of October 27, 2019, Echard left the bedroom where Brandi was sleeping and walked to the living room were A.B. was

---

[1] *See* Ind. Code § 35-42-4-3(a)(1).

[2] *See* Ind. Code § 35-50-2-8.

sleeping on an air mattress. *State's Ex.* 1 at 6. Echard's daughter was sleeping in another bedroom that was about ten feet away from the living room where A.B. slept. *Tr. Vol. 2* at 35; *State's Ex.* 1 at 6, 9. Echard sat in a chair near the air mattress and woke A.B., telling her how he had "crack[ed]" the skulls of other prisoners while he was incarcerated and that he could crack additional skulls without being punished, which A.B. understood as an attempt by Echard to scare her. *State's Ex.* 1 at 6, 7, 9. Echard then began to massage A.B.'s back and shoulders and continued to touch her despite A.B.'s statements to Echard that she wanted him to stop. *Id.* at 9. Echard removed A.B.'s pants and underwear, placed his hand over her mouth, used his mouth to lick her vagina, and at one point inserted his tongue inside of her vagina. *Id.* A.B. attempted to get up, but Echard pulled her down. *Id.* Brandi walked in on Echard as he was performing oral sex on A.B., and when he stopped, he told Brandi he was "so sorry that you caught me." *Tr. Vol. 2* at 34; *State's Ex.* 1 at 6-7. Brandi and Echard argued about the incident, and, at one point, Echard prevented Brandi from calling 911 to report what had happened. *Tr. Vol. 2* at 34. After the argument, Echard left the house, and Brandi called the police. *Id.* at 34-35. Echard fled to Tennessee and was not taken into custody until October 30, 2019. *State's Ex.* 2 at 12.

[4] On October 29, 2019, the State charged Echard as follows: (1) Count I, child molesting as a Level 1 felony; (2) Count II, criminal confinement as a Level 5 felony; (3) Count III, interference with the reporting of a crime as a Class A misdemeanor; and (4) Count IV, child molesting as a Level 4 felony. *Appellant's*

*App. Vol. 2* at 9-12. That same day, the State also filed an information alleging that Echard was an habitual offender because of his convictions in 2015 for intimidation as a Level 5 felony and carrying a handgun without a license as a Level 5 felony and his 2012 conviction for strangulation as a Class D felony. *Id.* at 13-14. On March 20, 2020, Echard pleaded guilty to Count I, child molesting as a Level 1 felony and admitted that he was an habitual offender. *Id.* at 51-53; *Tr. Vol. 2* at 4-24. In exchange, the State agreed to dismiss the remaining charges along with a petition to revoke probation that had been filed in another case. *Appellant's App. Vol. 2* at 52. The plea agreement also specified sentencing parameters, which provided that "the initial executed Department of Correction portion of the sentence shall be no less than thirty-five (35) years and no more than fifty (50) years." *Id.* at 51. It also provided that "any sentence above thirty-five (35) years may be served in the Indiana Department of Corrections, and/or on Probation[,]" that "any sentence above fifty (50) years may be served on Probation[,]" and that Echard may be placed on Tippecanoe County Community Corrections. *Id.*

[5] On April 15, 2020, the trial court held a sentencing hearing at which it had Echard's presentence investigation report ("PSI"), his psychosexual risk evaluation, a victim impact statement from A.B.'s mother, and a letter from Echard's grandparents. *Id.* at 6-7; *Tr. Vol. 2* at 28. The State also moved to admit three police reports, dated October 27, 2019, October 30, 2019, and February 26, 2020, which the trial court admitted. *Tr. Vol. 2* at 31. In his psychosexual risk evaluation, Echard reported that A.B. twice requested that he

give her a back massage before she told him that he "owe[d]" her a massage. *Def. Ex.* 1 at 27. He claimed that while he was giving A.B. a back massage A.B. was "moaning, sticking her ass up in the air" and that he believed she was interested in sexual behavior. *Id.* Echard reported that he asked her, "Are you ok with this? Are you sure?" on "several occasions[,]" and she responded affirmatively each time. *Id.* Echard also told the psychologist that he "was seduced," that A.B., "look[ed] like she was 18," and that he "knew it was wrong" but was "talked into it." *Id.*

[6]   Echard also prepared a narrative of the events that were included in the PSI in which he wrote that A.B. requested that he give her a back massage, that he was "intrigued[,]" that the situation became "heated[,]" and that A.B. told him "not to leave" before she "flipped on to her back." *Id.* at 125. He wrote that he was "turned on" even though he "knew it was wrong[,]" that "she then removed her shorts and underwear[,]" and that he "used [his] hands on her" while performing oral sex for approximately a "half a minute" on A.B. until Brandi arrived and "shoved" his shoulder, ending the incident. *Id.*

[7]   A.B.'s mother submitted a letter stating that before the offense occurred, A.B. was "a very outgoing, fun, and interactive person" but now has "nightmares almost nightly" and has been in counseling and on medication for post-traumatic stress disorder, severe depression, and anxiety. *Appellant's Conf. App. Vol. 2* at 131. She also wrote that A.B. gets severe anxiety if she "hears anyone raise their voice or start to argue or if she hears a sudden loud noise." *Id.* Echard's grandparents submitted a letter on his behalf stating that Echard was

"very remorseful and would do anything to change his wrong acts" and requesting that Echard not be placed "in a maximum security facility." *Def. Ex. 2* at 38.

[8]     Brandi stated at Echard's sentencing hearing that "[t]he image of finding [Echard] and the I'm so sorry you caught me. I don't believe that he's sorry. I believe he's sorry that he got caught." *Tr. Vol. 2* at 34. Echard made a statement in which he apologized and expressed regret, stating "I am one hundred percent truly sorry. I mean it was just a horrible, despicable thing. And it was really, I don't expect your forgiveness. I am sorry. Truly, I am." *Id.* at 36-37. At the conclusion of the hearing, the trial court stated:

> And throughout this whole record, I keep seeing you're blaming [A.B.] You keep saying well she wanted a back rub. She wanted this. She wanted that. She's thirteen, you're the adult! You can't blame it on a little girl. And I don't think you get that. . . . You may be sorry for all that. But that's diminished in the Court's view by the constant reference to blaming this little child for what you did to her. And I don't think you get that.

*Id.* at 47-48.

[9]     The trial court then sentenced Echard to an aggregate sentence of forty-eight years with forty-three years executed and five years suspended to supervised probation. *Id.* at 52; *Appellant's App. Vol. 2* at 91-92. Echard's aggregate sentence was composed of a thirty-eight-year executed sentence for his conviction of Level 1 felony child molesting and an additional ten years for being an habitual offender with five years suspended. *Id.* It also imposed the

following special probation condition: "31. You shall abide by all the terms of the electronic device user agreement for sex offenders (see attached)" ("Condition 31"). *Appellant's App. Vol. 2* at 103; *Tr. Vol. 2* at 59. The electronic device user agreement incorporated by Condition 31 was not attached to the special probation conditions that the trial court ordered and that Echard initialed, but a copy of the document was submitted before sentencing. *Appellant's App. Vol. 2* at 62-67, 100-03. The trial court stated that Echard could "go over [the electronic device user agreement's] terms with the probation officer at the appropriate time." *Tr. Vol. 2* at 59. The second paragraph of the electronic device user agreement incorporated by Condition 31 provides as follows:

Client shall obtain prior approval from the Supervising Officer/Designee to engage in the following activities:

_____ Web browsing (including but not limited to surfing).
_____ Email (all email accounts must have prior approval).
_____ Interpersonal communication (including but not limited to chatting, texting and instant messaging).
_____ Producing web content (including but not limited to a web site, Facebook, Myspace, and other social networking site pages, YouTube, Podcasting, blogging, vlogging, Personals (Craigslist, Backpage, etc..).
_____ Participating in social networking activities
_____ Internet related telephone communication (including but not limited to using Voice Over Internet Protocol).
_____ File sharing by any method (including, but not limited to Peer to Peer, Internet Relay Chat, attachments to emails, iTunes).

*Appellant's App. Vol. 2* at 66. Echard now appeals.

# Discussion and Decision

## I.    Probation Condition

Echard first contends that Condition 31's restriction on his use of internet technology pursuant to the second paragraph of the electronic device user agreement is overly broad and in violation of *Weida v. State*, 94 N.E.3d 682 (Ind. 2018), which held that a substantially similar special sex offender probation condition was unreasonable as applied. *Appellant's Br.* at 11-13. The State agrees that, pursuant to *Weida*, remand is appropriate to strike the second paragraph of the electronic device user agreement incorporated by Condition 31. *Appellee's Br.* at 12-13. We agree that remand is appropriate.

In *Weida*, the Indiana Supreme Court held the following condition of Weida's probation unreasonable:

> You shall not access the Internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers, Palm Pilots, televisions, or any other electronic device at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. You shall not possess or use any data encryption technique or program.

94 N.E.3d at 686. The Court noted that the condition was unreasonable because it "did not reasonably relate to rehabilitating Weida and protecting the public." *Id.* at 693. The second paragraph of the electronic device user agreement applicable to Echard's probation through Condition 31 is

substantially similar to the probation condition held unreasonable in *Weida*.
Therefore, in accordance with *Weida*, we affirm and remand with instructions
for the trial court to strike the second paragraph of the electronic device user
agreement.[3]

## II. Inappropriateness of Sentence

[12] Echard next argues that his sentence is inappropriate in light of the nature of the
offense and his character and requests that we reduce his aggregate sentence
from forty-eight years to thirty-eight years. Pursuant to Indiana Appellate Rule
7(B), this court "may revise a sentence authorized by statute if, after due
consideration of the trial court's decision, the [c]ourt finds that the sentence is
inappropriate in light of the nature of the offense and the character of the
offender." Whether a sentence is inappropriate turns on our sense of the
culpability of the defendant, the severity of the crime, the damage done to
others, and other factors that come to light in a given case. *Cardwell v. State*, 895
N.E.2d 1219, 1224 (Ind. 2008). We defer to the trial court's decision, and our
goal is to determine whether the appellant's sentence is inappropriate, not
whether some other sentence would be more appropriate. *Conley v. State*, 972
N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome

---

[3] Because we remand for the trial court to strike the second paragraph of the electronic device user agreement as violative of *Weida*, we need not address Echard's alternative arguments concerning overbreadth and undue restriction of his constitutional rights. *See Appellant's Br.* at 13 ("Even assuming *arguendo* that *Weida* were not controlling, Condition 31 would nevertheless be unenforceable as an undue intrusion upon constitutional rights.") (emphasis in original).

by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). When we review a sentence, we seek to leaven the outliers, not to achieve a perceived correct result. *Cardwell*, 895 N.E.2d at 1225. On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Shell v. State*, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010).

[13] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Echard pleaded guilty to one count of Level 1 felony child molesting and an habitual offender enhancement. Echard's Level 1 felony child molesting offense carries an advisory sentence of thirty years with a sentencing range of twenty to forty years. Ind. Code § 35-50-2-4(b).[4] The habitual offender enhancement provides for a sentencing range of six to twenty years, which is not suspendible. Ind. Code § 35-50-2-8(i). By statute, the maximum sentence Echard could have received was sixty years. However, the plea agreement specified that "the initial executed Department of Correction portion of the

---

[4] Echard's commission of Level 1 felony child molesting was not subject to the fifty-year maximum sentence established under Indiana Code section 35-50-2-4(c) because Echard did not commit "a Level 1 felony child molesting offense described in: (1) IC 35-31.5-2-72(1); or (2) IC 35-31.5-2-72(2)." Those two subdivisions address circumstances in the commission of a Level 1 felony child molesting offense that result in a person's designation as a credit restricted felon. *See Tr. Vol. 2* at 11 (noting that although Echard committed a Level 1 felony child molesting offense his offense was not credit restricted.) Credit restriction aside, the minimum and advisory sentences under Indiana Code section 35-50-2-4(c) are the same as those in subsection (b).

sentence shall be no less than thirty-five (35) years and no more than fifty (50) years." *Appellant's App. Vol. 2* at 51. It also provided that "any sentence above thirty-five (35) years may be served in the Indiana Department of Corrections, and/or on Probation[,]" that "any sentence above fifty (50) years may be served on Probation[,]" and that Echard may be placed on Tippecanoe County Community Corrections. *Id.* Here, the trial court sentenced Echard to an aggregate sentence of forty-eight years with forty-three years executed and five years suspended to supervised probation. *Id.* at 91-92. Echard's aggregate sentence was composed of a thirty-eight-year executed sentence for his conviction of Level 1 felony child molesting, which is eight years above the advisory sentence but within the parameters established by the plea agreement, and an additional ten years for being an habitual offender with five years suspended. *Id.* Thus, Echard received an enhanced, aggravated sentence that was less than the maximum established in the plea agreement and by statute.

[14] As to the nature of the offense, Echard contends that his offense consisted of performing oral sex on A.B. for approximately thirty seconds which was the "only instance of inappropriate sexual contact." *Appellant's Br.* at 17. He argues that the offense did not involve penetration, that A.B. was not of tender age, that he did not commit the offense by force, that the offense did not result in physical injury to the victim, and that the nature of his offense does not "warrant an aggravated and enhanced sentence eighteen (18) years greater than the advisory." *Id.* at 18. We disagree. The nature of the offense compares the defendant's actions with the required showing to sustain a conviction under the

charged offense. *Cardwell*, 895 N.E.2d at 1224. "One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence. *Holloway v. State*, 950 N.E.2d 803, 806-07 (Ind. Ct. App. 2011)

[15] The evidence in the record pertaining to Echard's guilty plea is contrary to his claim that his offense was less egregious than the typical offense of Level 1 felony child molesting enhanced by his accompanying admission to being a habitual offender. In perpetrating the offense, Echard, who was thirty-one at the time, approached then thirteen-year-old A.B.'s bed and told her how he had "crack[ed] skulls" while incarcerated and that he was never caught, which A.B. understood as an attempt to scare her. *Tr. Vol. 2* at 14, 18; *State's Ex.* 1 at 7, 9. Echard proceeded to massage A.B.'s back and shoulders and continued to touch her despite A.B.'s statements to Echard that she wanted him to stop. *State's Ex.* 1 at 9. Echard persisted and removed A.B.'s pants and underwear, placed his hand over her mouth, used his mouth to lick her vagina, and, at one point, inserted his tongue inside of her vagina. *Id.* A.B. attempted to get up, but Echard pulled her down. *Id.* Despite Echard's contention that his performance of oral sex on A.B. lasted only thirty seconds, which appears in Echard's account of the offense that he provided as part of his PSI, the record does not reveal the act's precise duration. *Appellant's Conf. App Vol. 2* at 125. Regardless of the duration, the act did not end until Brandi entered the room

and witnessed Echard performing oral sex on A.B. *Tr. Vol. 2* at 34; *State's Ex.* 1 at 6. Brandi described A.B. as appearing lifeless and in shock, and when Brandi confronted Echard about what she had just witnessed, Echard blamed A.B., stole Brandi's phone so that she could not immediately call the police, and fled the State for three days. *Id.* at 5-7; *State's Ex.* 2 at 12. As a result of the offense, A.B. now has frequent nightmares and suffers from post-traumatic stress disorder, severe depression, and anxiety. *Appellant's Conf. App. Vol. 2* at 131. In light of Echard's conduct in intimidating and using fear to dominate A.B. before and during the offense and the resulting damage done to A.B. and her family, the nature of Echard's offense is sufficiently egregious to justify his enhanced, aggravated sentence. *See Holloway*, 950 N.E.2d at 806-07.

[16] As to the character of the offender, Echard argues that his sentence is inappropriate and merits revision because of his prompt guilty plea, expression of remorse, and status as a seven and one-half year veteran of the Army Reserve. *Appellant's Br.* at 18-19. He also contends that his criminal history should not have been used to support "further aggravation and execution of the sentence." *Id.* at 19. We disagree. The analysis of the character of the offender involves a broader consideration of a defendant's qualities. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "The character of the offender is shown by the offender's life and conduct." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013).

[17] Here, as to the impact of Echard's criminal history on his sentence, the trial court's sentencing order expressly stated that "most of [Echard's] criminal history is encompassed in the Habitual Offender enhancement." *Appellant's App. Vol. 2* at 91. Nevertheless, Echard's remaining criminal history that is not encompassed by the habitual offender enhancement reflects poorly on his character. Echard has been previously convicted of operating a vehicle with a schedule I or II controlled substance or its metabolite as a Class C misdemeanor in 2007 and domestic battery as a Class A misdemeanor in 2016. *Appellant's Conf. App. Vol. 2* at 109-10. Echard violated his probation for his 2016 conviction for domestic battery at the time he committed the present offense, and the State agreed to dismiss the probation violation in that case in exchange for Echard's guilty plea. *Appellant's App. Vol. 2* at 52. Other aspects of Echard's life and conduct also reflect poorly on his character. Echard's eight-year-old daughter, who was in the home at the time Echard committed the offense against A.B., was found to be a child in need of services ("CHINS") on October 17, 2012 due to four incidents of domestic violence occurring between Echard and the child's mother; however, the child was never removed from the home and the CHINS case was dismissed on April 19, 2013. *Tr. Vol. 2* at 34-35 *Appellant's Conf. App. Vol. 2.* at 112. Although the use of illegal drugs or alcohol did not play a role in the offense, Echard's PSI shows that he used marijuana three times per day between the ages of sixteen and twenty-eight and used mushrooms and LSD in his early twenties, which reflects a disregard for the law. *Appellant's Conf. App. Vol. 2* at 113.

[18]    We acknowledge, as Echard urges, that pleading guilty and expressing remorse can be relevant factors in mitigation or revision of a sentence. However, we agree with the State that Echard's decision to plead guilty to the offense does not render his sentence inappropriate as it was likely a pragmatic plea, given the weight of the evidence against him including his wife witnessing the crime as it happened and that A.B. had no doubt that Echard was the perpetrator. *See Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011) (observing that a guilty plea based on pragmatic considerations is entitled to less mitigating weight), *trans. denied*. As to his expression of remorse, we note that while Echard apologized, stating he was "one hundred percent truly sorry. . . . it was just a horrible despicable thing" and acknowledged the impact his actions had on A.B. and his own family, the trial court also noted that Echard's "constant reference to blaming" of A.B. for his conduct "diminished" his apology. *Tr. Vol. 2* at 48. In fact, immediately after Brandi found Echard with A.B., Echard blamed A.B. telling Brandi that he was sorry she caught him, which was also consistent with Echard's statement to his psychologist during his psychosexual evaluation that A.B.'s "moaning [and] sticking her ass up in the air" had "seduced" him. *Id.* at 34; *Def. Ex.* 1 at 27. Finally, while Echard served in the Army Reserves, he received an "other than honorable discharge," which was a result of a 2015 conviction, and reflects poorly on him. *Appellant's Conf. App. Vol. 2* at 114; *Tr. Vol. 2* at 39. Thus, in broadly considering Echard's life and conduct, we cannot say that his sentence is inappropriate in light of his character.

[19] Echard has not shown that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We, therefore, affirm the sentence imposed by the trial court.

[20] Affirmed and remanded with instructions.

Pyle, J., and Tavitas, J., concur.